UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**VANESSA RHODES**, an individual,

    Plaintiff,

–vs–

**U.S. LAB & RADIOLOGY, INC. d/b/a U.S. LABORATORIES**, a foreign corporation, **SYMPHONY DIAGNOSTIC SERVICES NO. 1, INC. d/b/a MOBILEXUSA** and **MOBILEX USA**, a foreign corporation, and **TRIDENTUSA MOBILE INFUSION SERVICES, LLC**, a foreign corporation,

    Defendants.

Case No.:
Hon.

---

**DEBORAH GORDON LAW**
**Gordon & Prescott**
**Sarah S. Prescott (P70510)**
**Benjamin I. Shipper (P77558)**
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
sprescott@deborahgordonlaw.com
bshipper@deborahgordonlaw.com

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

**There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.**

Plaintiff **Vanessa Rhodes**, by and through her attorneys, **Deborah Gordon Law**, for her Complaint and Demand for Jury Trial against Defendants **U.S. Lab & Radiology, Inc. d/b/a U.S. Laboratories**, **Symphony Diagnostic Services, No. 1, Inc. d/b/a MobilexUSA** and **Mobilex USA**, and **TridentUSA Mobile Infusion Services, LLC**, states as follows:

## Parties and Jurisdiction

1. This is an action for wrongful discharge in violation of Michigan public policy arising out of Plaintiff's employment relationships with Defendant U.S. Lab & Radiology, Inc. d/b/a U.S. Laboratories ("U.S. Labs"), Symphony Diagnostic Services, No. 1, Inc. d/b/a MobilexUSA and Mobilex USA ("Mobilex"), and TridentUSA Mobile Infusion Services, LLC ("Trident").

2. Plaintiff **Vanessa Rhodes** is an individual domiciled in State of Michigan. Her sole residence is in Michigan and has been for many years.

3. Defendant **U.S. Labs** is a foreign corporation doing business in this District, but is incorporated in the State of Delaware and maintains its principal place of business in the State of Massachusetts.

4. Defendant **Mobilex** is a foreign corporation doing business in this District, but is incorporated in the State of Delaware and maintains its principal place of business in the State of Maryland.

5. Defendant **Trident** is a foreign corporation doing business in this District, but is incorporated in the State of Delaware and maintains its principal place of business in the State of Maryland.

6. Defendants will herein collectively be referred to as "Defendants" unless more specifically referred to individually.

7. This Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship amongst the parties and the amount in controversy is greater than $75,000.00.

8. This Court has personal jurisdiction over Defendants because they do business and can be found within this District.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants may be found within this District and the events giving rise to this Complaint occurred in this District; namely, Plaintiff was employed and terminated, as well as mitigated, in this District.

## Statement of Facts

10. At all times relevant to this claim, Plaintiff was employed by Defendants U.S. Labs, Mobilex, and Trident.

11. U.S. Labs is a company that performs medical diagnostic testing, offering mobile phlebotomy, laboratory, Digital Radiography and EKG testing services.

12. Mobilex is a company that performs bedside mobile imaging including x-ray, ultrasound, electrocardiogram, and other ancillary services.

13. Trident is a company that performs bedside diagnostics, laboratory services and hospice care.

14. Plaintiff began working for Defendants around September 2014 as a mobile phlebotomist.

15. In this role, Plaintiff traveled to various healthcare-providing organizations, including nursing homes, rehabilitation hospitals, home care and hospice agencies, as well as other locations, to perform phlebotomy services.

16. In or around December 2014, Defendants promoted Plaintiff to lead mobile phlebotomist, a position which included a salary increase.

17. As a lead mobile phlebotomist, Plaintiff was the manager of a team of mobile phlebotomists in one of four geographic areas in Southeastern Michigan and Ohio.

18. Plaintiff's immediate supervisor was Theresa Mwimbwa, whom Defendants employed as a Phlebotomy Supervisor.

19. Ms. Mwimbwa's immediate supervisor was Shirley Johnson, whom Defendants employed as a Lab Manager.

20. Defendants maintain a compliance hotline to encourage employees to report ethics and legal compliance violations ("Compliance Hotline").

21. On July 7, 2015, Plaintiff called the Compliance Hotline to report a compliance violation by Shirley Johnson.

22. Specifically, Plaintiff reported that:

   a. Ms. Johnson instructed Plaintiff and other mobile phlebotomists to falsely record times that blood was drawn from patients so that the written time fit within Defendants' proscribed one-hour timeframe between the time the blood was drawn and when it was received by a laboratory, regardless of whether such draw-time was true.

   b. Shirley Johnson specifically instructed Plaintiff and other mobile phlebotomists to falsely write these times with respect to blood drawn pursuant to tests for ammonia and B-type natriuretic peptide (BNP) levels.

23. Defendants' written policy states that "The patient blood sample must be positively identified at the time of collection. Tubes with patient identification written in permanent ink on label bearing at least the following: . . . The time of collection."

24. Shortly after her good faith report, on or around July 13, 2015, Shirley Johnson began to monitor Plaintiff particularly closely and to harass her.

25. On July 24, 2015, Plaintiff discussed both compliance issues and other areas of concern with Joseph Jardine, Vice President of Human Resources of Defendant Mobile, including:

    a. That Shirley Johnson was contributing to a hostile work environment and sabotaging Plaintiff.

    b. That Plaintiff had made the complaint to the Compliance Hotline on July 7, 2015.

    c. That Defendants' blood-draw procedure violated Defendants' and Medicare's regulations because phlebotomists drew blood from patients:

        i. pursuant to requisitions that omitted signatures from doctors of registered nurses;

        ii. pursuant to requisitions that were either unsigned completely, or were signed by a licensed practical nurse; or

        iii. pursuant to requisitions that omitted a diagnosis code.

    d. That Shirley Johnson instructed phlebotomists that the only required information to include on blood-draws was the patient's name, what was tested, and the patient's birthday, and that phlebotomists should "make up a diagnosis code."

    e.    That making up a diagnosis code violates multiple federal and state regulations, and can constitute fraud against the federal government if the diagnosis code "made-up" is one that charges a higher rate than the patient's diagnosis for which the blood was actually tested.

    f.    That Shirley Johnson instructed phlebotomists to draw blood and later have the documentation signed by a doctor or registered nurse.

    g.    That Defendants' employees kept blood samples in vials without caps and in cardboard boxes, in violations of health and safety standards

    h.    That Defendants' employees kept blood samples that required refrigeration in a refrigerator along with food, including the employees' lunches, also in violation of health and safety standards.

26.    Plaintiff refused to violate state and federal laws related to the above-mentioned compliance issues and areas of concern.

27.    Joseph Jardine never responded to Plaintiff about the compliance issues Plaintiff raised to him.

28.    However, days later, on July 27, 2015, Shirley Johnson sent Plaintiff an email instructive Plaintiff to clock out with less than fifteen minutes' notice.

The instruction stated that Plaintiff would not be paid for any additional time worked past noon.

29. After Plaintiff stopped working pursuant to her supervisor's direct order, Defendants' Client Services Manager contrarily directed Plaintiff to report to work in a different location.

30. Plaintiff informed this Manager that Ms. Johnson had instructed her that she would not be paid and must not perform additional work.

31. Plaintiff also contacted Joseph Jardine to sort out the conflicting instructions, and reported that Ms. Johnson's harassment "is all due to the fact that her team has all been reported for not following procedures" and workplace safety rules, regulations and/or laws.

32. Defendant then terminated Plaintiff, effective August 3, 2015.

33. Plaintiff's performance with Defendants was satisfactory or better at all times, and her performance was not the reason for the termination.

## COUNT I
## Wrongful Discharge in Violation of Michigan Public Policy

34. Plaintiff realleges all prior paragraphs as if they were fully set forth herein.

35. During her employment with Defendants, Plaintiff failed and refused to violate laws, statutes, regulations and/or rules promulgated pursuant to law, and

refused to acquiesce in Defendants' violations of laws, statutes, regulations, and/or rules promulgated pursuant to law.

36. In particular, Plaintiff failed and refused to violate or acquiesce in, or reported, violations of laws governing the standard of care for occupational health and environment controls related to the withdrawal, testing, storage, and Medicare billing of blood samples.

37. Plaintiff's termination was in retaliation for her failure and refusal to violate or acquiesce in, or reporting of, violations of law and her protected reporting of violations of law and regulations.

38. Plaintiff's treatment and termination violated the clearly established public policy of the State of Michigan, i.e., that an employer may not discharge an employee because she fails or refuses to violate the law, or reports violations of the law, in the course of employment.

39. The actions of Defendants, their agents, representatives, and employees were intentional, wanton, willful, malicious and taken in bad faith, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

40. As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

41. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered injuries and damages including but not limited to: loss of career opportunities; loss of fringe and pension benefits; mental anguish; anxiety about her future; physical and emotional distress; humiliation and embarrassment; loss of professional reputation; damage to her good name and reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

## RELIEF REQUESTED

For all the foregoing reasons, Plaintiff demands judgment against Defendants as follows:

    **A.    LEGAL RELIEF**

        1.    Compensatory, economic and noneconomic damages in whatever amount she is found to be entitled;

        2.    A judgment for lost wages and benefits, past and future, in whatever amount she is found to be entitled; and

        3.    An award of interest, costs and reasonable attorney fees.

    **B.    DECLARATORY EQUITABLE RELIEF**

        1.    An order out of this Court reinstating Plaintiff to the position she would have held had there been no wrongdoing by Defendants;

        2.    An injunction out of this Court prohibiting any further acts of discrimination or retaliation;

        3.    An award of interest, costs and reasonable attorney fees; and

   4.  Whatever other declaratory and/or equitable relief appears appropriate at the time of final judgment.

Dated:  November 23, 2015  Respectfully submitted,

           **DEBORAH GORDON LAW**
           **Gordon & Prescott**

           /s/Sarah S. Prescott (P70510)
           Benjamin I. Shipper (P77558)
           Attorneys for Plaintiff
           33 Bloomfield Hills Parkway, Suite 220
           Bloomfield Hills, Michigan 48304
           (248) 258-2500
           sprescott@deborahgordonlaw.com
           bshipper@deborahgordonlaw.com

## JURY DEMAND

Plaintiff **Vanessa Rhodes,** by her attorneys **Deborah Gordon Law,** demands a trial by jury of all the issues in this cause.

Dated:  November 23, 2015  **DEBORAH GORDON LAW**
           **Gordon & Prescott**

           /s/Sarah S. Prescott (P70510)
           Benjamin I. Shipper (P77558)
           Attorneys for Plaintiff
           33 Bloomfield Hills Parkway, Suite 220
           Bloomfield Hills, Michigan 48304
           (248) 258-2500
           sprescott@deborahgordonlaw.com
           bshipper@deborahgordonlaw.com